THE CITY OF CAMDEN, DEFENDANT IN ERROR, v AARON WARD AND THE NATIONAL SURETY COMPANY, PLAINTIFFS IN ERROR.

Argued March 5, 6, 1902—Decided June 16, 1902.

1. A contract between the defendant Ward and the city of Camden for the paving of a street with asphalt provided that if the defendant stopped the work before completion the commissioner of streets of the city might procure the necessary materials and labor and proceed with the construction of the work according to the plans and specifications, and the expense so incurred should be chargeable by the city against the defendant and his surety, the other defendant. *Held*, (*a*) that Ward having left the work incomplete, the mode of procuring the labor and materials necessary for completion was committed to the discretion of the street commissioner, and that his failure to procure them at a reasonable cost formed no defence against the city's claim on the defendants for the expense actually incurred; (*b*) that a city ordinance requiring "any department under the city government, or any committee or board appointed by the city council" to advertise for proposals before binding the city for work or materials, was not applicable to such contract; (*c*) that if the defendants had the right to have any particular mode adopted for procuring the necessary labor and materials, their failure to object to the method actually chosen, when they were kept informed, by timely notice from the commissioner of each step taken by him in the premises, was a waiver of that right.

2. In an action upon a bond in a penal sum, conditioned for the per-
formance of a covenant, the jury, if they find for the plaintiff,
should assess the damages arising from breach of the covenant,
and, if those damages exceed the penal sum, should also assess
damages for the non-payment of the penal sum—that is, the inter-
est thereon from the time when it was due under the pleadings
until the time for entering judgment; and the judgment should be
that the plaintiff recover the penal sum as debt, and the interest
thereon (if necessary) as damages for detention of the debt, and
that the plaintiff have execution for the damages assessed on
breach of the covenant not exceeding the debt and damages for
detention.

On error to the Supreme Court.

For the plaintiff in error the National Surety Company,
*Norman Grey.*

For the defendant in error, *Lindley M. Garrison* and *Edwin
G. C. Bleakly.*

The opinion of the court was delivered by

DIXON, J. On December 30th, 1898, the defendant Ward
entered into a written contract with the city of Camden to
pave Federal street, in that city, with asphalt pavement on
concrete foundation, at designated prices, and to complete
the work by November 1st, 1899. One clause of the contract
is as follows:

"If for any reason the contractor fails to comply with the
directions of the commissioner of streets as to commencing
the work, or after commencing he shall stop or shall prose-
cute the work without due diligence, or with an insufficient
force of men, in the opinion of the commissioner of streets,
then the commissioner of streets may procure the necessary
materials and labor and proceed with the construction of the
work called for by these plans and specifications, and the ex-
pense incurred by him in such procedure shall be deducted
from any money or funds then due, or that may thereafter
become due, to the contractor from the city of Camden on
account of the contract performed under these specifications.

If such money or funds be insufficient to pay such expense incurred, then the said contractor and his sureties shall be liable to pay such excess, upon demand, to the city of Camden."

On January 10th, 1899, the defendants, Ward and the National Surety Company, gave their bond to the city in the penal sum of $18,776, conditioned to be void if the said Ward should in all things perform the contract. On this bond the present suit was brought.

At the trial of the cause in the Camden Circuit the following facts appeared.: Ward commenced his work on the street about April 24th, 1899, and continued until May 24th, 1899, when the work ceased, and Ward told the street commissioner of the city that he was not able to proceed with it. On May 31st, 1899, the street commissioner notified both defendants, in writing, that, unless within ten days they proceeded with the work, he would proceed with it according to the contract. On June 11th, 1899, the work not having been resumed, the committee on streets of the city directed the street commissioner to proceed according to the contract, and on June 16th, 1899, the street commissioner notified the defendants, in writing, that he had invited proposals for completing the contract. Requests for such proposals were sent to seven paving companies stationed in different places, from Philadelphia to Detroit, and on June 26th, 1899, the commissioner notified the defendants that the only bid received was from the Vulcanite Paving Company, of Philadelphia, and gave them the details of that bid. The notice further stated that he proposed to award the contract to that company on the bid, and would ask the council, at its meeting on June 29th, 1899, to ratify such award. At that meeting the council ratified the award, and accordingly the contract was made between the city and the Vulcanite Paving Company for the completion of the work. On July 15th, 1899, the commissioner notified the defendants that, pursuant to his previous notice, he was now about to proceed with and complete the work, for which they would be held responsible according to the contract, and if at any time they were ready, with a sufficient force of

men and materials, to resume the work, they would be permitted to do so. To these notices no replies were sent, except that, on June 23d, June 29th, August 3d and September 9th, 1899, Ward gave written notice that he was not in default, that he was making arrangements to proceed, and that he protested against the making of any contract affecting the street. Ward never did resume, or offer to resume, the work, and, so far as appears, he was not making, or attempting to make, any arrangements for its resumption. The work was finally completed by the Vulcanite Paving Company, under its contract with the city, and the claim by the city on the bond of the defendants was for the difference between the cost of completion and the price under the Ward contract, being $14,856.78.

At the Circuit a verdict was directed in favor of the plaintiff for this sum as damages.

On error to this court the defendants rely upon points now to be considered.

*First.* It is insisted that to show a breach of the contract by Ward there must have been some formal decision to that effect by the street commissioner, under the clause of the contract above recited.

Perhaps such a decision might have been necessary if the question was whether Ward had been prosecuting the work *without due diligence, or with an insufficient force of men;* for what was due or insufficient would be a matter of judgment. But the alleged breach consisted of *stopping the work,* and as to that there was no room for judgment; the matter was one of mere fact. As to such a breach we think the contract called, not for an opinion of the commissioner, but for proof of the fact. Such proof, without contradiction, was produced at the trial.

*Secondly.* It is urged that the street commissioner did not, as the contract required of him, procure the materials and labor necessary to complete the work, but that the city itself, under a new contract, completed the work.

It is true that the work was completed under a contract

made with the city, but the testimony was entirely clear that such contract was only the means adopted by the street commissioner for procuring the necessary labor and materials. The work was not one for which he could readily purchase materials and employ laborers in the open market; for it required a special product and skilled workmen already under the control of companies engaged in that kind of paving, so that the practicable method of procuring the labor and materials was by engaging one of those companies to furnish them. For such an engagement the credit of the city was almost essential. It was within the power of the street commissioner, under the contract, to employ the means actually adopted for the completion of the work. Nor is there any force in the suggestion that the various steps taken to that end were controlled by the agencies of the municipality. Each step was taken by the street commissioner himself, but he properly applied for and received the approval of the city authorities, just as, by his various notices to the defendants, he gave them opportunity to approve or object. Such action on his part was entirely consistent with due exercise of his authority under the contract.

Next the defendants contend that the plaintiff was bound to show that the work was completed at a reasonable price, or at least that reasonable care had been taken to do so, and they complain that on the trial they were denied the opportunity of showing that, with reasonable care, the work could have been done at less expense.

If, on the default of the defendants, the city itself had, either under the terms of the agreement or without any express provision therefor, assumed control of the work, no doubt any expense incurred through a lack of reasonable care and judgment would not have been chargeable to the defendants. But such is not the case. Here the parties have chosen that the responsibility of finishing the work, in case of the contractor's default, should not be cast upon the city, but they have selected another person for that purpose, and have thus agreed to abide by such care and judgment as he might exercise. They have not bargained with each other as to the

degree of his skill or diligence. What the defendants agreed to was that the street commissioner, in such way as seemed proper to him, should procure the necessary labor and materials and proceed with the construction of the work, and that the expense incurred by him in such construction (not the expense which a careful and skilled man would necessarily incur) should, after payment by the city, be chargeable by the city against the defendants.

It appeared in the case that there existed a city ordinance, passed in 1886, which enacted that it should not be "lawful for any department under the city government, or any committee or board appointed by the city council, to make or enter into any contract or agreement with any person or persons for any work to be performed or materials to be furnished, by which to bind the city of Camden for any sum of money exceeding fifty dollars," unless advertisement for proposals were made in a certain manner prescribed by the ordinance. And the defendants urge that this ordinance should be regarded as applicable to the present situation and as binding the street commissioner to advertise in that manner for proposals to obtain the materials and labor necessary for this work. But we think the street commissioner, acting under this contract, is not within the terms of this ordinance, for he was neither a department of the city government nor a committee or board appointed by the council. Nor does the fair import of the ordinance reach the substance of the case in hand, for it is evident its design was merely to control the agencies of the city in the exercise of their official functions, while the authority of the street commissioner which we are now considering arose, not from his office, but from this contract. *Matter of Leeds,* 53 *N. Y.* 400.

We conclude, therefore, that the action of the commissioner was, in all respects, warranted by the terms of the agreement.

There is a further ground on which the defendants should be denied the right now to complain of the mode in which the commissioner proceeded to complete the work or of the expense incurred by him.

As before stated, every step taken or contemplated by him

was communicated by him to the defendants in time for them to object and for any objection made by them to be considered; but, except for the repetition of the false statement that Ward was not in default and so nothing should be done, they were silent. The evident purpose of the notice given to the defendants by the street commissioner was to inform them of the view which he entertained of his power and duty under the appointment made by the defendants and the city, so that if his view was disapproved the disapproval might be expressed. To the invitation thus given it was the duty of the defendants to respond or to take the consequences of being silent when they should have spoken. They remained silent and *qui tacet, consentire videtur; qui potest et debet vetare, jubet si non velat. Sumner* v. *Seaton,* 2 *Dick. Ch. Rep.* 103, 111; *Keasbey* v. *Wilkinson,* 6 *Id.* 29, 36. If, therefore, the defendants were entitled to have any particular plan adopted for the completion of the work, they have, by their conduct, waived that right and conclusively acquiesced in the course actually pursued. After the work was done and the expense incurred it was too late to object.

On the general features of the case therefore we conclude that the right of the plaintiff to the verdict directed was fully established.

The foregoing views also dispose of the numerous questions raised at the trial respecting the admission of evidence. Those questions related to the propriety of advertising or taking other steps to procure bids for finishing the work and to the reasonable cost of such completion. But considering, as we do, that the plan adopted by the commissioner was within his authority under the contract, and that the defendants were bound for the actual cost, it was unimportant that some other course, resulting in less expense, might have been pursued.

The assignments of error are not well founded, and the judgment should be affirmed.

There is another writ of error between the same parties to review a judgment on a similar contract and bond given for the paving of Broadway. A formal difference between

the cases is found in the fact that under the Federal street contract the defendant Ward had commenced the work and then stopped, while under the Broadway contract the defendant Ward never commenced the work, although duly notified by the street commissioner to do so; but this difference did not alter the legal aspect of the case, and that judgment should likewise be affirmed.

In each of these cases the *postea* and the judgment are irregular. By the *postea* it appears that the jury assessed the difference between the actual cost of the work and the contract price as the damages of the plaintiff on occasion of the detention of the debt—that is, the penal sum mentioned in the bond. The damages for the detention of the debt could not be other than the interest upon the debt from the time when it was due under the pleadings until the time for the entry of judgment. The difference between the contract price and the actual cost of the work constituted the damages upon the breach of the condition of the bond, not the damage for the detention of the debt. The judgment is that the plaintiff recover the difference between the contract price and the actual cost; the judgment ought to be that the plaintiff recover the debt and the damages for the detention of the debt, and that the plaintiff have execution for the damages arising from the breach.

In the case of *Gloucester* v. *Eschbach, 25 Vroom* 150, the Supreme Court held, and we think rightly, that if the damages arising from breach of the condition exceed the penal sum mentioned in the bond, the plaintiff may recover interest on that sum so far as it is necessary to meet those damages. In the Broadway contract it appears that the damages did exceed the penal sum and interest thereon from the date mentioned in the pleadings—July 19th, 1900—and therefore the judgment should be for the recovery of that penal sum and that interest, with an award of execution for the same amount. In the Federal street contract the damages did not exceed the penal sum, and in that case therefore the damages should be for the recovery of the penal sum and nominal interest, with an award of execution for the damages.

The form of the *postea* and of the judgment will be indicated by *Chit. Forms* (*6th ed.*) 108.

In the Broadway judgment there is another irregularity, for it entitles the plaintiff to recover one sum from the surety company and a larger sum from the defendant Ward. The declaration being against both defendants as joint contractors, every count in it, to be valid, must be referable to some joint obligation, and the only joint obligation in the case was the bond. Under that bond the obligation of each was, of course, the same, and the judgment against both should be for the same amount.

There being no assignment of error touching these irregularities, they are now noticed merely for the purpose of saying that, in affirming the judgments, we do not mean to preclude any application to the court below for the amendment of the record.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, COLLINS, FORT, GARRETSON, HENDRICKSON, PITNEY, BOGERT, ADAMS, VREDENBURGH, VOORHEES, VROOM. 14.

*For reversal*—None.