**METROPOLITAN CASUALTY INS. CO. OF NEW YORK v. UNITED STATES.**

No. 7558.

Circuit Court of Appeals, Ninth Circuit.

Dec. 21, 1936.

John Lichty, of Portland, Or., for appellant.

Carl C. Donaugh, U. S. Atty., and J. Mason Dillard, Asst. U. S. Atty., both of Portland, Or.

Before GARRECHT, DENMAN, and HANEY, Circuit Judges.

GARRECHT, Circuit Judge.

This is an appeal from a judgment in favor of the United States of America on a bond wherein appellant, Metropolitan Casualty Insurance Company of New York, was surety and which was given to secure the performance of the contract involved in this action.

On the 18th day of June, 1926, J. M. Bedford, doing business as Crystal Creek Logging Company, entered into a contract with the superintendent of the Klamath Indian Reservation wherein he agreed that prior to March 31, 1936, he would cut, log, and pay for certain timber upon lands described in the said contract lying within the boundaries of said reservation, the quantity of timber being estimated at 30,-000,000 feet board measure.

Bedford agreed to cut and remove not less than 5,000,000 board feet prior to March 1, 1928, and not less than 5,000,000 board feet thereafter in each twelve-month period until the area was entirely logged. The schedule of prices to be paid was incorporated in the contract and the manner in which the logging should be carried on was set forth in detail. The closing paragraph of the contract is in the following language: "It is further understood and agreed that this contract shall be null and void and of no effect until approved by the Secretary of the Interior and until the latter shall approve a bond of the Purchaser in the penal sum of ten thousand dollars ($10,000) conditioned on the faithful performance of all the terms of this contract and the regulations attached hereto."

Bedford, the purchaser of the timber, applied to appellant, which is and was a surety company engaged in the business of acting as a surety on such obligations for the execution by that company as surety of a bond, with Bedford as principal, upon a form prepared by the Department of the Interior.

The bond was executed by him as principal and the company as surety upon the 21st day of September, 1926, and was de-

livered to and filed with the Department of the Interior. This bond, after formal recitations of the execution of the contract by Bedford, concludes as follows:

"Whereas, said Assistant Secretary of the Interior did on the 12th day of May, 1926, duly accept said proposal, and the proposal thereupon became a binding contract.

"Now, therefore, if the above-bounden Crystal Creek Logging Company, unincorporated, J. M. Bedford, sole owner, his heirs, executors, administrators, successors, and assigns, shall faithfully conform to and observe all the laws and regulations made and which shall be hereafter made for the governing of trade and intercourse with the Indians, and in no respect violate the same, and conduct all timber operations in accordance with said regulations, and all provisions of the contract entered into with Superintendent, Klamath Indian Reservation, representative of the said Assistant Secretary of the Interior and in no respect violate said regulations or·contract, or either of them, then, and in that event, this obligation shall be null and void; otherwise it shall remain in full force and effect."

The penalty of this bond was the sum of $10,000.

Thereafter, pursuant to the contract, Bedford commenced logging operations upon the land under contract, but proceeded in a desultory manner, and up to and including the month of June, 1928, he had logged only 1,742,450 board feet from the tract, whereas the contract required him to have logged 5,000,000 board feet by that time, and he was further required by the terms of the contract to thereafter log a minimum of 5,000,000 board feet each year.

In June of 1928 Bedford had abandoned logging operations and thereafter failed to remove any timber from the tract. During the following year notice was repeatedly given to the appellant, Metropolitan Casualty Insurance Company, of Bedford's default under his contract, and by letter of June 10, 1929, the surety was notified that Bedford had abandoned the contract and the penalty of the bond was demanded. On the 2d day of December, 1930, the complaint in this action was filed in the District Court of the United States for the District of Oregon seeking to recover the full penalty of appellant's bond.

The Forest Supervisor for the Klamath Indian Agency was the only witness at the trial of the case, which occurred on the 26th day of May, 1932. He testified that he had been familiar with the operations of the contractor, J. M. Bedford; that he had logged only 1,742,450 board feet under said contract; and that no timber had been logged since June, 1928, when Bedford abandoned his contract. The witness further testified that he knew the market value of the timber on the Klamath Indian Reservation and that at the date of the trial a liberal estimate of the value of yellow pine would be $4 per thousand; that the contract price of the yellow pine for the first three-year period was $8 per thousand, and for the second three-year period $9.50 per thousand; that the yellow pine on the tract was about 40,000,000 board feet; that the Douglas Fir and Incense Cedar were worth at the date of trial about half of the contract price; that the Metropolitan Casualty Insurance Company of New York had been notified of the default of Bedford, as set forth above.

At the conclusion of this evidence both parties rested, appellant having introduced no testimony. Both sides moved for a directed verdict. It was thereupon stipulated in open court by counsel for the respective parties that the jury might be discharged and the matter left for the decision of the court without a jury.

Appellant has interposed fourteen assignments of error which are reduced to two propositions of law stated in appellant's brief as follows:

"First Proposition of Law.

"The bond, which is the subject matter of this action, did not, by its terms, cover, and was not intended to cover the obligation of the contractor to remove and pay for the timber, but was merely intended to secure to the government payment for any damage occasioned by failure of the contractor to observe the laws and regulations made for the governing of trade and intercourse with the Indians, and to conduct the timber operations in accordance with such regulations, and the provisions of the contract with respect to the manner in which such timber operations should be conducted."

"Second Proposition of Law.

"If the bond can be construed to cover the loss claimed by the Government, ap-

pellee failed to prove a proper measure of damage."

As to the first proposition:

█ The contract provided that it should be null, void, and of no effect until the Secretary of the Interior approved the bond of $10,000 "conditioned on the faithful performance of all the terms of this contract and the regulations attached hereto." Subsequently the bond which refers to the terms of the contract was approved.

The bond definitely refers to "regulations" relating to payment for the timber and sets out that the principal in the bond had agreed "that if the said proposal was accepted by the Assistant Secretary of the Interior the proposal and its acceptance should constitute a binding contract for the sale of said timber, and that said principal would cut, fell, remove, and pay for said timber in accordance with the regulations accompanying the proposal. * * *"

Thus the contract is a part of the bond by reference, and both were approved by the Secretary of the Interior upon the same date, and there is therefore no doubt that it was the intention of the government and of the Insurance Company that the latter should be liable if said person failed to carry out the terms of the contract as to the purchase and payment for the timber. The interpretation of the contract as given by the District Court must be approved.

As to the second point:

█ It is earnestly contended that the appellee failed to prove a proper measure of damages for the principal's breach of the contract in failing to cut and remove the timber. The evidence offered was that the stumpage value of the timber, at the date of the trial, was approximately 50 per cent. of the contract price. It is argued that, since the trial did not take place until approximately four years after the contract was first breached by Bedford, the values then obtaining had no relation to the damage suffered by appellee. This argument loses its force when we consider, as was pointed out by the trial court, that this was a continuing contract, the time for the fulfillment of which had not expired at the date of the trial. On this point the finding was: "The Court further finds that the said contract was a continuous one and required the purchaser to cut and take 5,-

000,000 feet each year until the said contract was fully performed, and that the current price of timber at the time proof was submitted was sufficient to establish the damage of the United States in a much greater sum than that sued for."

In support of its contention appellant quotes a fragment of section 647 of Sutherland on Damages. A reading of the entire section leads to the conclusion that the purpose of the law is to award to the injured party adequate compensation for the loss sustained. Here the full penalty of the bond would compensate only for a small fraction of the damages occasioned by the breach of the contract. Moreover, the evidence discloses that for the very year during which the trial was had the damages sustained were far in excess of the amount recovered. "The rule as respects the time for computing value is not without flexibility where justice requires it." Id. § 647, p. 2239.

As the court indicated and the appellant impliedly admitted, the penalty of the bond is altogether inadequate to reimburse appellee for failure to comply with the contract.

Affirmed.