**EMPLOYERS MUTUAL CASUALTY COMPANY, Plaintiff–Appellee,**

v.

**UNITED FIRE & CASUALTY COMPANY, Defendant–Appellant.**

No. 03–0489.

Court of Appeals of Iowa.

Feb. 11, 2004.

August Landis of Whitfield & Eddy, P.L.C., Des Moines, for appellant.

F. Richard Lyford and Tracy L. Deutmeyer of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for appellee.

Heard by HUITINK, P.J., and VOGEL and MAHAN, JJ.

MAHAN, J.

### I. Background Facts & Proceedings

Employers Mutual Casualty Company (EMC) hired Neumann–Kiewit Constructors (Neumann) as the general contractors to construct a high-rise, the EMC Building, in Des Moines, Iowa. Neumann subcontracted with Keith Janning's Terrazzo & Tile, Inc. (Janning) to install terrazzo on the first two floors of the building for the price of $147,864.[1] The contract provided Janning was required to furnish a performance and payment bond in the amount of the contract price.

Janning obtained a performance and payment bond from United Fire & Casualty Company (United Fire) in the amount of $147,864. Janning installed the terrazzo, but it was of substandard quality. Neumann filed suit against Janning and United Fire, as its surety. The parties discussed whether the floor should be entirely replaced or could possibly be repaired. Janning and United Fire offered the services of DH & Associates (DH) to repair the terrazzo. DH inspected the floor in August and November 2000, and thought the problem could be fixed.

On February 9, 2001, the parties entered into the "Mutual Releases and Settlement Agreement," which provided Neumann would dismiss its lawsuit.[2] The settlement agreement specified that DH would be retained under a contract with Janning and United Fire to repair the terrazzo and replace certain panels "to a commercially reasonable finish." DH was to begin work within 120 days after Neumann dismissed its lawsuit. The parties agreed, "Any dispute involving the scope of work or what constitutes a commercially reasonable finish will be resolved by an independent expert to be agreed upon by the parties." Neumann's suit was dismissed on March 26, 2001.

Janning and United Fire entered into a contract with DH to repair the terrazzo for $68,389. No provision was made to replace certain panels which had been removed for testing. EMC required an independent expert to be selected before it would allow DH to begin work. United Fire agreed to the selection of an expert,

---

1. Terrazzo is "flooring of small chips of marble set in cement and polished." Webster's New World Dictionary 1468 (2d ed.1976). It has also been defined as "a mosaic flooring made by embedding small pieces of marble or granite in freshly placed mortar and after hardening, grinding and polishing." Webster's Third New International Dictionary 2360 (2002).

2. The parties to the settlement agreement were EMC, Neumann, Janning, United Fire, and the building architects, Brooks Borg & Skiles.

but pointed out that an expert was not required under the terms of the settlement agreement, because there was at that time no "dispute involving the scope of work or what constitutes a commercially reasonable finish." The parties agreed upon FEH Associates, Inc. (FEH) to act as an independent expert.

DH appeared at the EMC Building on July 7, 2001, with the intention of beginning the repair process. EMC employee Donald Klemme took David Hulce of DH on a tour or survey of the damage to the terrazzo. Hulce did not make any repairs because he determined the first floor had deteriorated since he had previously inspected it, and the cost to repair the floor had increased to the point where it would be more effective to replace the floor. DH remained willing to do the work on the second floor. United Fire sought to involve the independent expert, FEH, but EMC would not agree to this procedure.

EMC filed suit against United Fire for breach of contract due to DH's failure to repair or replace the terrazzo as required by the settlement agreement. United Fire claimed: (1) the parties were mutually mistaken about DH's ability to do the work; (2) EMC breached the contract first; (3) if United Fire did breach the contract, this was due to a legal excuse; and (4) its damages should be limited to $147,864, the amount of the bond agreement.

The district court determined that under the settlement agreement United Fire and Janning were jointly liable to provide EMC with a terrazzo floor with a "commercially reasonable finish." The court found United Fire breached the contract, and it failed to prove any of its defenses. The court determined the total cost of repair and replacement was $847,390, and United Fire should be liable for this amount. United Fire appeals.

## II. Standard of Review

Our scope of review in this action is for the correction of errors at law. Iowa R.App. P. 6.4. The findings of fact in a law action are binding upon us if they are supported by substantial evidence. Iowa R.App. P. 6.14(6)(*a*). Evidence is substantial if a reasonable mind would accept it as adequate to reach the same findings. *Frontier Props. Corp. v. Swanberg*, 488 N.W.2d 146, 147 (Iowa 1992).

## III. Mutual Mistake

■ United Fire claims the settlement agreement is not enforceable because the parties made a mutual mistake regarding DH's ability to repair the terrazzo. It asserts that at the time of the settlement agreement the parties believed the terrazzo was "very fixable" and that DH was willing to perform the required repair work.

For a contract to be valid, the parties must express mutual assent to the terms of the contract. *Heartland Express, Inc. v. Terry*, 631 N.W.2d 260, 268 (Iowa 2001). If there is a misunderstanding as to the object of the agreement, no meeting of the mind occurs, and there is no contract. *Schaer v. Webster County*, 644 N.W.2d 327, 338 (Iowa 2002). The misunderstanding must be reasonable under the circumstances of the case. *Id.* A unilateral mistake by one party will not release that party from its obligations under the contract. *State v. Unisys Corp.*, 637 N.W.2d 142, 150 (Iowa 2001).

The language of the settlement agreement shows the parties did not believe the problems with the terrazzo could be completely fixed by repair work alone. The agreement provided DH would engage in "replacement of panels where samples removed . . . ." In addition:

It is understood that DH may subcontract out certain work; that is, the replacement of the panels where samples were taken out of the first and second floor, and any other panels that are deemed necessary to replace in order to achieve the commercially reasonable finish as provided herein.

We conclude the district court did not err by ruling United Fire had failed to show the contract was unenforceable due to mutual mistake.

### IV. Breach of Contract by EMC

■ United Fire contends EMC is not entitled to relief because it failed to perform under the terms of the contract. A party who seeks recovery on a contract has the burden to plead and prove the contract and its performance. *Roland A. Wilson & Assocs. v. Forty–O–Grand Corp.*, 246 N.W.2d 922, 925 (Iowa 1976) (citing *Heaberlin v. Heaberlin*, 255 Iowa 403, 406–07, 122 N.W.2d 841, 843 (1963)).

United Fire points out that the contract provides, "Any dispute involving the scope of work or what constitutes a commercially reasonable finish will be resolved by an independent expert to be agreed upon by the parties." United Fire believes the present dispute involves the scope of DH's work, and should have been submitted to the independent expert, FEH.

On this issue the district court found:

When DH walked off the job and failed to repair or replace the floor as required by the agreement, this was not a dispute involving the scope of work to be resolved by the independent expert, it was a breach of [United Fire's] obligation under the agreement to repair and replace the floor to a commercially reasonable finish.

We find no error in the district court's conclusion that there was no "dispute involving the scope of work ..." to be performed. DH simply failed to perform any work under the agreement.

### V. Breach of Contract by United Fire

■ United Fire claims there is insufficient evidence to show that it breached the terms of the settlement agreement. A party breaches a contract when, without legal excuse, it fails to perform any promise which forms a whole or a part of the contract. *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998).

The settlement agreement provided DH would be retained by Janning and United Fire to "repair the terrazzo floor installed by Janning, including but not limited to cracking, spalling, delamination, bleed-over, and replacement of panels where samples removed, to a commercially reasonable finish." The district court found:

DH never agreed to do what [United Fire] needed it to do in order to fulfill [United Fire's] obligations under the Mediation Agreement. As a result, [United Fire] failed to provide EMC with a contractor that would repair and replace the floor, and thus breached its obligations under the Mediation Agreement.

We determine the district court did not err in concluding United Fire breached the settlement agreement.

### VI. Legal Excuse

■ United Fire asserts that even if it is found to have breached the contract, it had a legal excuse. It states performance under the contract became impracticable because of a supervening event, which was the deterioration of the condition of the terrazzo to the point it was no longer repairable.

Our supreme court has noted:

Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.

*American Soil Processing, Inc. v. Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd.*, 586 N.W.2d 325, 330 (Iowa 1998) (quoting Restatement (Second) of Contracts § 261 (1981)). Under this rule, a party may be relieved of its duty under a contract if performance has unexpectedly become impracticable as a result of a supervening event. *Id.* United Fire also claims there was a supervening frustration of purpose. *See Mel Frank Tool & Supply, Inc. v. Di–Chem Co.*, 580 N.W.2d 802, 806 (Iowa 1998) (quoting Restatement (Second) of Contracts § 265).

As the district court noted, at the time of the settlement agreement, all of the parties were aware the terrazzo was in poor condition and needed to be repaired or replaced. The court did not err by concluding United Fire cannot now claim the poor condition of the floor was an unexpected supervening event, or that it frustrated the purpose of the contract.

### VII. Limitation of Liability

■ Finally, United Fire asserts that its liability to EMC should be limited to the amount of the performance and payment bond, which is $147,864. It points out that under the terms of the bond agreement, it would never be liable for more than the amount of the performance and payment bond. United Fire claims the settlement agreement did not create a new obligation, but was merely a mechanism by which it performed its obligations under the bond agreement.

Under the terms of the bond agreement, United Fire was the surety and Neumann and EMC were both listed as obligees. However, only United Fire, Janning, and Neumann signed the bond agreement. The bond agreement provided:

In no event shall the Surety be liable in the aggregate to both Obigees for more than the penalty of its Performance and Payment Bond, nor shall it be liable except for a single payment for each single breach or default. At the Surety's election, any payment due to either obligee may be made by its check issued jointly to both.

Under a performance bond, a surety generally has two options if the principal defaults: (1) undertake the completion of the principal's work itself; or (2) pay the obligee the amount of the bond. *Granite Computer Leasing Corp. v. Travelers Indem. Co.*, 894 F.2d 547, 551 (2d Cir.1990); *see also First Fed. State Bank v. Town of Malvern*, 270 N.W.2d 818, 819 (Iowa 1978) (noting surety had completed the project after principal defaulted); *Winnebago County State Bank v. Davidson*, 186 Iowa 532, 534, 172 N.W. 449, 450 (1919) (same).

At the time Neumann brought suit against Janning, United Fire could have submitted the amount of the bond and walked away from the agreement. If it had done so, its liability would have been limited by the penal limits of the bond. *See Fellows v. Errington*, 186 Iowa 322, 327, 170 N.W. 545, 547 (1919). When the surety refuses to perform the contract after the principal defaults, "the surety is liable to the owner for the damages caused by the contractor's default but only up to the penal sum of the bond." *In re Technology for Energy Corp.*, 123 B.R. 979, 982 (Bkrtcy.E.D.Tenn.1991).

While a surety contract will be strictly construed according to its terms, a surety

may agree to modify the contract, and extend its liability. *Andrew v. Austin,* 213 Iowa 963, 967, 232 N.W. 79, 81 (1930). When a surety assumes the performance of the contract, the surety becomes subrogated to the rights of the principal, and necessarily becomes subject to the principal's liabilities. *State v. Cornwall,* 102 Or. 220, 201 P. 1072, 1077 (1921) (citing *Ausplund v. Aetna Indem. Co.,* 47 Or. 10, 81 P. 577, 580 (1905)). Other courts have noted:

> One who is in reality a surety may contract as a principal. He may waive the rights which the law throws around a surety, for such a waiver has nothing in it offensive to the law; and the surety does waive such rights when he in terms contracts and agrees to be bound as the principal.

*Caron v. Andrew,* 133 Cal.App.2d 402, 284 P.2d 544, 550 (1955) (quoting *Beers v. Wolf,* 116 Mo. 179, 22 S.W. 620, 621 (1893)).

When a surety takes over performance of a contract, the surety's liability is no longer limited by the amount of the bond. *Technology for Energy,* 123 B.R. at 983. We note:

> Ordinarily, a surety on a bond is not liable beyond the penalty named therein. However, this limitation may be varied by the contract, by bad faith on the part of the surety, or by statute; and where a surety assumes the role of the principal and completes the contract, the surety is liable to pay sums in excess of the penal sum.

72 C.J.S. *Principal & Surety* § 75, at 223–24 (1987) (footnotes omitted); *see also Federal Sur. Co. v. Lalonde,* 31 F.2d 673, 674 (9th Cir.1929) (finding surety who took over work from contractor may be liable in excess of penalty bond); *Caron,* 284 P.2d at 550 (finding surety became liable for the costs of completing the project "without reference to the amount for which it had signed as surety"); *International Fid. Ins. Co. v. Wilson,* 387 Mass. 841, 443 N.E.2d 1308, 1314 (1983) ("Where a surety company assumes the role of the principal and completes the contract, it is liable to pay sums in excess of the penal sum."); *Copeland Sand & Gravel, Inc. v. Insurance Co. of N. Am.,* 40 Or.App. 831, 596 P.2d 623, 625 (1979), *rev'd on other grounds* 288 Or. 325, 607 P.2d 718 (1980) (finding the penal sum does not limit the liability of a surety that takes over performance of a contract).

In the present case, after Janning's default, United Fire took the option of taking over Janning's performance under the contract. By taking over the contract, United Fire waived its protections as a surety and agreed to be bound as the principal. *See Cornwall,* 201 P. at 1077. When United Fire assumed the role of the principal, it became liable to pay sums in excess of the amount of the bond. *See International Fid. Ins. Co.,* 443 N.E.2d at 1314.

■ Furthermore, the settlement agreement in this case specifically provided:

> It is understood that this Agreement and the DH contract referenced in paragraph 1 above run to EMC as a third-party beneficiary, but [Neumann] and EMC retain the right to bring an action against Janning, [United Fire], or both, if Janning and [United Fire] breach any part of this Agreement, or if DH fails to complete the work described in paragraph 1 above within a reasonable amount of time after beginning its work. *As between [United Fire] and Janning only,* nothing in this Agreement shall be construed as a novation or waiver of any of the provisions of the written General Indemnity Agreement between them.

(Emphasis added.)

In addition, by providing that "between [United Fire] and Janning only" there had

been no waiver of the bond agreement, the settlement agreement implies that there has been a waiver as to other parties. Waiver is the voluntary or intentional relinquishment of a known right. *Scheetz v. IMT Ins. Co.*, 324 N.W.2d 302, 304 (Iowa 1982). A waiver can be either express or implied. *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Federated Mut. Ins. Co.*, 596 N.W.2d 546, 552 (Iowa 1999).

We determine that as to EMC, the district court did not err in concluding that United Fire, as Janning's surety, may be responsible for the full amount of the damages caused by the breach of contract.

We affirm the decision of the district court.

**AFFIRMED.**