# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2946

_____

Wells Fargo Financial Leasing, Inc.    *
formerly known as Norwest    *
Financial Leasing, Inc.,    *
   *     Appeal from the United States
        Appellee,    *     District Court for the
   *     Southern District of Iowa.
     v.    *
   *       [PUBLISHED]
LMT Fette, Inc.,    *
   *
        Appellant.    *

_____

Submitted: April 13, 2004
Filed: September 13, 2004

_____

Before WOLLMAN, HANSEN, and BYE, Circuit Judges.

_____

HANSEN, Circuit Judge.

LMT Fette, Inc. (LMT), a Delaware corporation, appeals the district court's[1] grant of summary judgment to Wells Fargo Financial Leasing, Inc. (Wells Fargo), an Iowa corporation, in this diversity-based contract dispute. We affirm.

_____

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

The district court found that the undisputed facts include the following. In June 2001, Joe Nader of Standard Office Systems (SOS) contacted Robert Rubenstahl, president of LMT, about purchasing some equipment for making in-house copies. Nader persuaded Rubenstahl to lease the equipment on a trial basis, with Nader's assurance that LMT would be under no obligation to buy the equipment.

In July 2001, Nader presented Rubenstahl with a preprinted Wells Fargo credit application and lease agreement in order to secure financing for the lease. Rubenstahl signed the blank preprinted documents before Nader had entered all the information and terms but with the understanding that LMT would be responsible for monthly payments in some unspecified amount. The credit application included a signature block labeled "Delivery and Acceptance Certificate," which bears Rubenstahl's signature. The lease agreement included a default clause specifying that in the event of default, the lessee was obligated to pay the outstanding balance on the lease as well as reasonable attorney's fees and costs. Nader later filled in the blanks, listing SOS as the vendor, LMT as the vendee, and $5,362.50 as the monthly payment amount over a term of 60 months. Nader submitted the documents to Wells Fargo, and Wells Fargo approved the lease.

Before the equipment was delivered, Rubenstahl contacted Nader and told him that LMT was no longer in a position to lease the equipment even on a trial basis. Nader reassured him that LMT was under no obligation and that SOS would take over the lease. Rubenstahl did not contact Wells Fargo about this arrangement. He denies ever receiving the equipment but the equipment invoice, dated July 25, 2001, bears his stamped signature.

LMT began receiving monthly billing statements from Wells Fargo in the amount of $5,362.50 for the equipment lease. Rubenstahl contacted Nader, who explained that Wells Fargo had the wrong billing address and that he would take care of it because SOS intended to maintain and buy out the lease. After sending a third

2

bill, a Wells Fargo credit agent called LMT to inquire about the delinquent lease. Rubenstahl told the agent that he had cancelled the lease and that SOS was the responsible party, but Wells Fargo indicated that it considered LMT the responsible party.

Rubenstahl again contacted Nader, who assured him it was only a paperwork problem. Nader, for the first time, told Rubenstahl that he was a subagent for Wells Fargo and was authorized to transfer leases. Following a subsequent call from a Wells Fargo attorney again stating that LMT was responsible on the lease, Rubenstahl contacted Nader and demanded a letter holding LMT harmless on the lease and directing Wells Fargo to send all further inquiries to SOS. Once again, Nader assured him that SOS was in the process of buying out the lease. Nader provided Rubenstahl a letter dated November 2, 2001, which stated that SOS had taken possession of all of the equipment covered by the lease and would hold LMT harmless for any debt associated with the lease.

A Wells Fargo representative again contacted LMT, informing Rubenstahl that LMT was in default, that the accelerated balance of $327,199.99 was due, and that Wells Fargo intended to litigate the matter. Rubenstahl then organized a telephone conference between Wells Fargo, LMT, and Nader. During the call, Wells Fargo agreed to dismiss the lawsuit if it received a payment of $50,000 by April 30, 2002, followed by a second payment of $275,000. Nader agreed that SOS would make these payments, and although Wells Fargo agreed to accept payment from SOS, it did not release LMT from liability on the lease. SOS paid the $50,000 but did not make the final payment; consequently, Wells Fargo did not dismiss the lawsuit against LMT. The district court granted summary judgment to Wells Fargo.

We review de novo the district court's grant of summary judgment, applying the same standards as the district court. Mayard v. Hopwood, 105 F.3d 1226, 1227 (8th Cir. 1997). Summary judgment is appropriate if the record "show[s] that there

3

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the facts and the inferences to be drawn from them in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). We look to the substantive law to determine whether an element is essential to a case, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

LMT does not dispute the plain language of the agreement but denies responsibility under the agreement on the basis of Nader's misrepresentations. To establish fraudulent misrepresentation as a defense under Iowa law in this diversity case, LMT must show by clear, satisfactory, and convincing evidence: (1) that an agent of Wells Fargo made a representation, (2) that was false, (3) and material, (4) made with knowledge that the representation was false, (5) and an intent to deceive, (6) on which LMT justifiably relied, (7) that the representation was the proximate cause of harm, and (8) that damages resulted. See Gibson v. ITT Hartford Ins. Co., 621 N.W.2d 388, 400 (Iowa 2001).

To survive summary judgment on this asserted defense, LMT must demonstrate the existence of a genuine question of fact on the issue of whether Nader was a Wells Fargo agent. After considering the record, we conclude that Nader's representations cannot be imputed to Wells Fargo on the basis of either express or implied authority. There is no evidence that Wells Fargo gave Nader either express or implied authority to act as its agent. See Agristor Leasing v. Farrow, 826 F.2d 732, 737 (8th Cir. 1987) (stating under Iowa law that express or implied agency is based on communications between the principal and agent). Apparent agency results when actions of the principal lead a third person to act in good faith on the reasonable presumption that he or she was dealing with the principal's agent. See id. In this case, however, Wells Fargo took no action that would lead a third person to believe that Nader was its

4

agent.  Nader claimed to be a subagent of Wells Fargo after Rubenstahl complained of having received a third bill from Wells Fargo, but no action of Wells Fargo confirmed that claim.  Nader, as the vendor, possessed Wells Fargo's lease application forms to facilitate financing for sales of SOS's equipment, but the forms clearly state that Wells Fargo is separate and independent from the vendor, that the vendor is not Wells Fargo's agent, and that the vendor can make no representation binding on Wells Fargo.  (Appellant's App. at 9.)  Rubenstahl's initials appear immediately below this declaration. Wells Fargo has consistently and unambiguously represented to Rubenstahl its understanding that LMT is the responsible party on the lease agreement and did nothing from which a third party reasonably could infer that Nader was a Wells Fargo agent.

LMT argues alternatively that Nader's failure to exercise reasonable care in supplying information concerning this business transaction amounts to negligent misrepresentation.  See Barske v. Rockwell Int'l Corp., 514 N.W.2d 917, 924 (Iowa 1994) (stating the elements of the tort of negligent misrepresentation).  A third party's negligent misrepresentation, however, cannot form the basis of a defense to performance of a contract without a basis for imputing the third party's actions to the plaintiff.  LMT's failure to establish that Nader was Wells Fargo's agent is fatal to LMT's argument.

LMT argues that the evidence of Nader's misrepresentations or negligence creates a question of fact on the issue of whether Rubenstahl intended to enter into the lease.  We disagree.  LMT is correct in stating that for a contract to be valid, the parties must express mutual assent to the terms. Heartland Express, Inc. v. Terry, 631 N.W.2d 260, 268 (Iowa 2001).  Also, if there is a misunderstanding concerning the object of the contract, no meeting of the minds occurs, and there is no contract. Schaer v. Webster County, 644 N.W.2d 327, 338 (Iowa 2002); Employer's Mut. Cas. Co. v. United Fire & Cas. Co., 682 N.W.2d 452, 454 (Iowa Ct. App. 2004).  Such a misunderstanding, however, must be reasonable under the circumstances, Employer's

Mut., 682 N.W.2d at 454, and "a unilateral mistake by one party will not release that party from its obligation under the contract absent fraud, misrepresentation, or other misconduct," State ex rel. Palmer v. Unisys Corp., 637 N.W.2d 142, 150 (Iowa 2001). LMT can demonstrate no fraud, misrepresentation, or other misconduct on the part of Wells Fargo absent a showing that Nader was its agent. Thus, any misconduct on Nader's part will not void the objectively valid contract with Wells Fargo. The evidence demonstrates that Rubenstahl knew he was signing blank lease documents and that LMT would be responsible for lease payments in some amount. He trusted Nader to enter a lease payment amount but did not secure an understanding on the amount of that payment or a clause permitting LMT to cancel the contract during a trial period. LMT thus bore the risk of signing a blank document. See Hall v. World Omni Leasing, Inc., 433 S.E.2d 297, 298 (Ga. Ct. App. 1993) (holding on summary judgment that where a party purposely signed a writing "with blanks left to be filled in by the other party, the person signing is bound by it" (internal marks omitted)).

LMT argues that a novation occurred when, during a conference call, Wells Fargo agreed to accept payment from SOS or Nader to settle this dispute. The proponent of the theory of novation must demonstrate "(1) a previous valid obligation, (2) agreement of all parties to the new contract, (3) extinguishment of the old contract, and (4) validity of the new contract." Matter of Integrated Res. Life Ins. Co., 562 N.W.2d 179, 182 (Iowa 1997) (internal marks omitted). The district court correctly found that LMT could prove only that there existed a valid previous obligation. There was no agreement to enter into a new contract or extinguish the old. Wells Fargo insisted at all relevant times that LMT was and remained the responsible party on the lease. No novation occurred, and summary judgment was appropriate.

Accordingly, we affirm the judgment of the district court.

_____