# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2381

_____

Sonya Haas,                     *
                                    *
             Appellant,           *
                                    *    Appeal from the United States
    v.                                *    District Court for the
                                    *    Western District of Missouri.
Kelly Services, Inc.,        *
                                    *
             Appellee.            *

_____

Submitted: January 11, 2005
Filed: May 26, 2005

_____

Before MELLOY, SMITH, and COLLOTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Sonya Haas filed this claim for age discrimination and retaliation after she was terminated from her job with Kelly Services, Inc. ("Kelly"). Haas now appeals summary judgment in favor of Kelly. We affirm summary judgment as to the age-discrimination claim, but reverse summary judgment on the claim for retaliation.

## I. *Background*

Haas began working with Kelly in 1997. Initially, Kelly hired Haas as a key account manager, but over time promoted her to the position of sales manager. In 2001, Haas was promoted to branch manager, where she had management and sales

responsibilities. Diann Wessel ("Wessel") assumed the duties of district manager of the Kansas City district in or about 2001. Barbara Schuster ("Schuster") was later hired in the Kansas City office. According to Haas, Schuster's transfer had the practical effect of demoting Haas. Prior to Schuster's arrival, Haas reported directly to Wessel and attended all management committee meetings. Schuster assumed the branch office management role previously performed by Haas and became Haas's direct supervisor.

In support of her claim of age discrimination, Haas cites various written communications between Schuster and Kelly management that Haas believes indicated a plan to terminate her. Haas maintains that Schuster created tension associated with Haas's age almost immediately after Schuster's transfer to Kansas City. Specifically, Haas cites a note Schuster wrote and placed in Haas's file after Haas complimented Schuster on her clothing. The note read that Haas suggested Schuster should go to a sales call "in one of . . . [her] short skirts." Haas also accuses Schuster of creating new sales guidelines applicable only to Haas. In early January 2002, Schuster created a document entitled "Sales Team activity and documentation guidelines—Kansas City" ("the New Guidelines"). According to Haas, the New Guidelines were not approved by Kelly's corporate office and the New Guidelines only applied to the Kansas City office. In addition, the only employee subject to the New Guidelines, other than Schuster herself, was Haas. Haas maintains that she was a sales manager at the time the New Guidelines were created, but under the New Guidelines Haas was treated as though she held the lesser position of key account manager. The New Guidelines also required Haas to have $1 million in new revenue in 2002. Haas characterized this revenue goal as unrealistic.

On January 16, 2002, only eleven business days after the New Guidelines took effect, Schuster contacted Kelly's human resources department regarding placing Haas on a performance improvement plan ("PIP"). According to Kelly's policy, the purpose of a PIP was to provide an underperforming employee with a genuine

opportunity to improve and continue employment. On January 18, 2002, Kelly's human resources manager, Laura Lanway ("Lanway"), provided Schuster with two documents: a PIP template and a sample wording template. The PIP usually contained a sample memo from manager to employee explaining the performance counseling and a performance improvement action plan ("Action Plan"). The Action Plan is an important component of the PIP process so that the employee knows "what the plan of action is to meet performance standards, change behavior or achieve desired results."

On January 28, 2002, Wessel sent Schuster the following e-mail regarding Haas's PIP: "Terry [Moskus, Wessel's supervisor,] is going over to tell Laura [Lanway] to call us before she leaves today. She wants [the PIP delivered to Haas] today. It will help us in making the necessary staffing reductions." According to Haas, this e-mail was at odds with Kelly's policy of providing an allegedly underperforming employee a genuine opportunity to improve and is evidence that Haas was being set up for termination. Moreover, according to Haas, the January 28, 2002 PIP drafted by Schuster for Haas was not in compliance with Kelly's policies.

Haas responded in writing to the PIP on February 8, 2002. In that response, Haas raised her concerns of age discrimination and stated:

> [T]he way in which these issues have been raised, and the unfair 'spin' you have put on the facts, lead me to suspect I am being 'setup' for a termination. I wonder whether our age difference causes you to be uncomfortable with me, and makes direct communication difficult for you. You told me this was not a 'write-up' but the last 6 paragraphs of your memo look like they were cut and pasted out of a Human Resources manual. You reference a 'program' and 'performance objectives' but nothing is specified or laid out in detail. If I am being put on some sort of 'probation,' I believe my years of experience and commitment to Kelly entitles me to a clear explanation of what is going on with my employment. I have only 7 months left before I vest in my

retirement; it is extremely important to me that I be given a fair opportunity to correct any perceived problems. I look forward to following up with you and having a candid conversation about these issues in person.

No one at Kelly responded to Haas's memorandum. However, the PIP itself set up a follow-up review date for February 28, 2002.

Because she received the PIP, Haas was not eligible for a fourth quarter bonus, as Kelly's bonus policy states: "Employees on leave of absence or on counseling as of the date the bonus is paid are not eligible to receive that bonus payment." According to Haas, Cari Williams, a customer service employee under 30 years of age, received a bonus even though she was ineligible for a bonus because she was on maternity leave.

On February 20, 2002, Haas wrote a letter to Wessel, which stated:

I have spent some time investigating my legal rights, and have come to understand that it is unlawful for Kelly to take adverse action against me because of (1) my age or (2) to avoid my retirement vesting that will occur upon my five year anniversary in September 2002. I believe that both of these motivations may underlie the way I am being treated. Unfortunately, I was told this morning by Elsa Sanders that Kelly has no employee handbook, and that employee concerns are handled on a 'case by case basis.' I do not know where to direct my complaint, but have decided to copy Ms. Lanway in Human Resources to make sure my concerns are taken seriously. At your earliest convenience please provide a response in writing to both this memo, and the one I provided on February 8.

Kelly's human resources managers admit that this memorandum contained a direct and protected complaint of age discrimination. Wessel received Haas's complaint of age discrimination on Thursday, February 21, 2002. On the same day

she received Haas's complaint, Wessel sent the following e-mail to Kelly's director of human resources, Craig Boerman: "Since Laura [Lanway] is traveling I sent a fax copy to you of a letter received from Sonya Haas today. I'd like to schedule a conference call with you and Barbara [Schuster] to discuss [the] next steps regarding Sonya's continued employment." The discussion regarding Haas's continued employment did not occur until the next day. Haas was directed to meet with Schuster and Wessel on the afternoon of Thursday, February 21, 2002. In that meeting, Wessel informed Haas of Kelly's age discrimination policy. Wessel also told Haas that "things did not look good for the 28th," the date she was to have a follow-up meeting to discuss her PIP. According to Haas, after the meeting on February 21, 2002, Schuster suggested that Haas should quit. Haas reportedly told Schuster that she had no intention of quitting.

On February 22, 2002, Haas reported to work, but then left in order to make sales calls. According to Haas, she had a doctor's appointment scheduled for 1:00 p.m. that afternoon and thus made sales calls for several hours before then. Haas returned a call from Schuster just before 1:00 p.m. and Schuster informed Haas that her doctor left a message stating that the doctor would not be available until later in the afternoon. Haas informed Schuster that she was already at the doctor's office, and that she would try to stay to see whether one of the nurse practitioners could see her. Haas's visit with the doctor concluded around 3:00 p.m. Haas then called the office, but neither Schuster nor Wessel answered. According to Haas, she left a message explaining that she was not feeling well and would take the remainder of the afternoon off as sick time. Haas received a message from Schuster on her home answering machine requesting that she return to the office before 5:00 p.m. Because it was already after 5:00 p.m. when Haas received the message, Haas did not return to the district office, nor did she attempt to call the office. Haas does not account for the two hour period between when she left the doctor's office and when she listened to the voice mail message at her home.

-5-

Kelly's human resources representative, Elsa Verrier ("Verrier"), spoke with Wessel and Schuster on February 22. Wessel and Schuster told Verrier that Haas had left the office without leaving contact information and that Schuster and Wessel had tried to contact her several times. The parties dispute the timing of the phone call with Verrier. According to Haas, Wessel and Schuster failed to inform Verrier that Haas had, in fact, returned her manager's phone calls. Verrier instructed them to first have a conversation with Haas and determine whether she had a legitimate reason for leaving the office. Only if Haas did not have a legitimate explanation for her whereabouts would Verrier give authority to terminate Haas.

On Saturday, February 23, 2002, Haas faxed a memo to Lanway that stated, in part:

> Something very wrong is going on here, and I need some help and guidance from you, or someone else in the Human Resources [d]epartment. First, it is obvious that Diann [Wessel] and Barbara [Schuster] are using the fact that I have made an HR complaint as a reason to fire me. I honestly believe that illegitimate reasons were behind the performance memo Barbara [Schuster] sent me on January 28, and now I am being punished for trying to raise these issues in my two recent memos. Even though Elsa Sanders [Verrier] told me there was no policy manual for employees, and that situations are handled on a 'case by case' basis, there must be some Kelly policy which protects employees who are trying to bring their concerns to the attention of management. Finally, I need to reiterate my concerns about age discrimination that I raised in my earlier memos. Although Diann [Wessel] repeated the company line about being an 'equal opportunity employer,' this was just lip service, and I don't think she or Barbara [Schuster] understand what that means. I know they are hoping that I get fed up enough to quit, and Barbara [Schuster] actually asked me if that is what I wanted to do after the meeting. I told her 'No,' and I have tried to make it clear from day one that I want to work through any problems or misunderstandings. I hope you will be able to become involved in this situation before it is too late.

Please contact me at your first opportunity.

On Monday, February 25, 2002, Wessel and Schuster terminated Haas. No one at Kelly contacted Haas regarding her complaint of age discrimination after her termination. According to Haas, immediately after her termination, Barbara Schuster assumed her job duties; and later, Haas's position was filled by Michael Nooney, Cindy Williams, and Peter Jones, who were all younger than Haas.

Haas filed this age discrimination action in Missouri state court under both the Age Discrimination in Employment Act ("ADEA") and the Missouri Human Rights Act. Kelly removed the action to the United States District Court for the Western District of Missouri. The district court granted summary judgment in favor of Kelly on Haas's claims of age discrimination and retaliation. The district court held that Haas could not come forward with sufficient probative evidence of discrimination. The district court also held that Haas's failed because to present evidence from which a jury could find that Haas was terminated because of her protected activity and the timing of her termination was not sufficient to create a jury issue. Haas's remaining state law claims for assault, battery, conversion, outrageous conduct, and invasion of privacy were remanded to state court. Haas now seeks reversal of summary judgment in favor of Kelly.

## II. *Discussion*

We review the grant or denial of summary judgment de novo, applying the same standard as the district court and may affirm on grounds supported by the record. *Bechtold v. City of Rosemount*, 104 F. 3d 1062, 1068 (8th Cir. 1997). Summary judgment is appropriate where the record shows that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 834 (8th Cir. 2002). A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate her allegations with sufficient probative evidence that would permit a

finding in her favor. *Wilson v. Int'l Bus. Mach. Corp.,* 62 F.3d 237, 241 (8th Cir. 1995). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wells Fargo Fin. Leasing, Inc. v. LMT Fette, Inc.*, 382 F.3d 852, 856 (8th Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 348 (1986)). However, "[w]e remain mindful that summary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based." *Mayer v. Nextel West Corp.*, 318 F.3d 803, 806 (8th Cir. 2003) (citing *Keathley v. Ameritech Corp.*, 187 F.3d 915, 919 (8th Cir. 1999)).

## A. *Age Discrimination Claim*

The ADEA prohibits an employer from terminating an employee because of the employee's age. 29 U.S.C. § 623(a)(1). Haas presented no direct evidence of intentional age discrimination, but rather based her claim on circumstantial evidence. As a result, we apply the *McDonnell Douglas* analytical framework. *Mayer*, 318 F.3d at 806–07; *see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04 (1973). The familiar *McDonnell Douglas* three-part burden-shifting framework requires that Haas establish a prima facie case of age discrimination. Specifically, Haas must show that : (1) she was at least 40 years old, (2) she was terminated, (3) she was meeting Kelly's reasonable expectations at the time of her termination, and (4) she was replaced by someone substantially younger. *See Mayer*, 318 F.3d at 807 (citing *McDonnell Douglas,* 411 U.S. at 802).

The district court found Haas stated a prima facie case thus creating a rebuttable presumption of unlawful discrimination.[1] *Mayer*, 318 F.3d at 807 (citing

---

[1]Kelly argues that the district court erred in failing to grant summary judgment in their favor on Haas's prima facie case of age discrimination and argues that Haas does not meet the third element of her prima facie age discrimination case, *i.e.* that Haas failed to meet Kelly's reasonable expectations at the time of her termination. We disagree. Haas's most recent performance evaluation occurred in April 2000. That

*Kneibert v. Thomson Newspapers, Mich., Inc.,* 129 F.3d 444, 451–52 (8th Cir. 1997)). Consequently, Kelly was required to and, according to the district court, did produce evidence of a legitimate, nondiscriminatory reason for terminating Haas. *Mayer*, 318 F.3d at 807 (*citing Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000)). Because Kelly met its burden of production, the presumption of unlawful discrimination disappeared, and Haas had to show Kelly's reason for termination was a pretext for intentional age discrimination. *Mayer*, 318 F.3d at 807.

At this stage, Haas "can avoid summary judgment only if the evidence considered in its entirety (1) created a fact issue as to whether Kelly's proffered reasons are pretextual *and* (2) created a reasonable inference that age was a determinative factor in the adverse employment decision." *Rothmeier v. Inv. Advisers, Inc.,* 85 F.3d 1328, 1336–37 (8th Cir. 1996) (emphasis added). The "sole remaining issue [is] discrimination *vel non.*" *Reeves,* 530 U.S. at 143 (internal quotation

---

performance evaluation stated that Haas consistently met the requirements of her job, and in some areas exceeded those requirements. In that same year, Haas also received a promotion and a pay increase. However, the facts also establish that in the nine months following the April 2000 evaluation, significant changes occurred that appeared to have an adverse affect on Haas's performance. These significant changes included a new supervisor, the implementation of new sales guidelines, the failure of Haas to reach her 2001 sales goals, and Haas being placed on PIP. This establishes genuine issues of material fact and the district court did not err in failing to grant summary judgment in favor of Kelly on this issue.

Kelly also argues that the district court erred in failing to rule in its favor on the issue of whether Haas was replaced by someone substantially younger. Again, there are genuine issues of material fact on this issue. For example, Haas argues that she was replaced by Michael Nooney, Cindy Williams, and Peter Jones, who were all substantially younger than her. Kelly, on the other hand, argues that Schuster, who is younger than Haas, and Wessel, who is the same age as Haas, performed her duties before anyone else was hired. The district court did not err in denying summary judgment in Kelly's favor on this issue.

omitted). Even though the burden of production shifted to Kelly at the second stage of the *McDonnell Douglas* framework, the ultimate burden of persuading the factfinder of intentional age discrimination rested with Haas at all times. *Id.*; *Rothmeier,* 85 F.3d at 1332 (citing *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248 (1981)).

The district court ruled that Kelly articulated a legitimate, nondiscriminatory reason for terminating Haas and that Haas could not show the reason was pretextual for a true intent to discriminate on the basis of age. We agree with the district court that Haas has not created a factual dispute that Kelly based her termination upon a prohibited motive of age discrimination.

Haas has attempted to prove her age discrimination case by weaving an intricate factual web. To show discrimination, Haas focused on a note written and put into Haas's file by Schuster. The note made reference to a conversation between Haas and Schuster, whereby Haas suggested that Schuster go to a sales call "in one of . . . [her] short skirts." Haas also argues that Schuster failed to treat Haas in a manner consistent with Haas's title and failed to pay her a bonus because she was on a PIP, while another younger employee who was on maternity leave was paid a bonus. According to Haas, these facts demonstrate age-related tension between Schuster and Haas. Haas and Schuster clashed, but Haas's evidence does not relate this tension to Haas's age or to age-based discrimination on the part of Schuster, Wessel or anyone else at Kelly. At oral argument, counsel for Haas conceded that the only evidence of age discrimination was Haas's belief that Kelly discriminated against her. "Evidence, not contentions, avoids summary judgment." *Mayer*, 318 F.3d at 809.

In addition to Schuster's note, Haas points to Kelly's failure to provide Haas with a Performance Action Plan after she received the PIP, failure to properly discuss the events leading to Haas's act of insubordination before terminating her on February 25, 2002, failure to discuss or investigate Haas's claims of age discrimination, and

-10-

failure to inform Kelly's human resources department of Haas's claims of discrimination before terminating Haas. Haas maintains that these failures to follow company policy further support her claim that Kelly's reasons for terminating Haas were illegitimate and that Haas's firing was not routine, but in fact intentional age discrimination. We do not "sit as a super-personnel department . . . [and] second-guess[] . . . business decisions." *Mayer*, 318 F.3d at 810. Kelly "can certainly choose how to run its business," including not to follow its own personnel policies regarding termination of an employee or handling claims of discrimination, "as long as it does not unlawfully discriminate in doing so." *Id.* There is no evidence creating a reasonable inference that age was a determinative factor in Haas's termination. The fact that Kelly may have failed to follow human resources policy does not create such an inference. We affirm the district court's summary judgment order on Haas's age-discrimination claim.

## B. *Retaliation Claim*

Haas also appeals the district court's grant of summary judgment on her claim of retaliation. A claim for retaliation is not based upon age discrimination, but instead upon an employer's actions taken to punish an employee who makes a claim of discrimination. "To establish a prima facie case of retaliation, . . . [Haas] must show that she participated in a protected activity, that . . . [Kelly] took adverse employment action against her, and that a [causal] connection exists between the two." *Herrero v. St. Louis Univ. Hosp.,* 109 F.3d 481, 485 (8th Cir. 1997). Neither party disputes that Haas's complaints stating her concerns about possible age discrimination constituted protected activities and that Kelly took an adverse employment action against her. However, the parties disagree whether there is a causal connection between Haas's complaints of age discrimination and her termination. *Calder v. TCI Cablevision of Missouri, Inc.*, 298 F.3d 723, 731 (8th Cir. 2002).

Haas relies heavily upon the temporal connection between her protected conduct and her termination. The timing of Haas's termination alone does not, as a

matter of law, carry her burden. We have repeatedly stated that "[g]enerally, more than a temporal connection . . . is required to present a genuine factual issue on retaliation . . . [and] recent cases have . . . made clear that a 'mere coincidence of timing' can rarely be sufficient to establish a submissible case of retaliatory discharge." *Kipp v. Missouri Highway and Transp. Comm'n,* 280 F.3d 893, 897 (8th Cir. 2002); *see also Feltmann v. Sieben,* 108 F.3d 970, 977 (8th Cir. 1997); *Nelson v. J.C. Penney Co., Inc.,* 75 F.3d 343, 346–47 (8th Cir. 1996); *Cram v. Lamson and Sessions Co.,* 49 F.3d 466, 474 (8th Cir. 1995). However, the timing of the termination can be close enough to establish causation in a prima facie case. *Peterson v. Scott County*, No. 04-2531, 2005 U.S. App. LEXIS 7891, at *19 (8th Cir. May 6, 2005).

Kelly contends it terminated Haas because she acted insubordinately by not returning to work when so instructed which caused Haas to miss a meeting. Despite this stance, Kelly agrees that it is disputed whether Haas was required to telephone or return to the office after her doctor's appointment concluded. Moreover, there are issues of fact as to whether Haas was given an opportunity to explain why she failed to call or return to work. Wessel's and Schuster's authority to fire Haas was conditioned on Haas receiving such an opportunity. Finally, there is also evidence in the record that the decision to fire Haas occurred before she filed her claims of discrimination. Given these substantial factual disputes, we hold genuine and material factual issues remain for a jury to resolve. Summary judgment in favor of Kelly on the issue of retaliation was therefore improper.

III. *Conclusion*

Summary judgment in favor of Kelly on Haas's age discrimination claim is affirmed. Summary judgment in favor of Kelly on Haas's retaliation claim is reversed. The case is remanded to the district court for further proceedings.

-12-

COLLOTON, Circuit Judge, concurring in part and dissenting in part.

I agree that the district court correctly granted summary judgment in favor of Kelly Services, Inc., as to Sonya Haas's claim alleging age discrimination. I also believe the district court was correct to grant summary judgment on Haas's claim alleging unlawful retaliation for protected activity, and I would thus affirm the judgment of the district court.

The court rightly explains that the mere temporal connection between Haas's complaint of age discrimination and her termination by Kelly Services is insufficient to establish a submissible case of unlawful retaliation by the employer. That general rule is particularly important in a case like this one, where Kelly Services had identified Haas as an underperforming employee, and placed her on a Performance Improvement Plan as a step toward potential termination, before Haas essentially created the temporal proximity by making what the court agrees is a meritless claim of age discrimination. If the rule on temporal proximity were otherwise, then a substandard employee, on the verge of termination for poor performance, could effectively inhibit a well-deserved discharge merely by filing a discrimination complaint. *Cf. Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 828 (1st Cir. 1991).

The court nonetheless holds that Haas is entitled to a jury trial on her claim of unlawful retaliation because of three factual disputes concerning her termination, which Kelly Services asserts was based on poor performance and insubordination. The first dispute – whether Haas was required to telephone or return to the office after her doctor's appointment on February 22 – might warrant a jury trial if the question before us was whether Kelly Services established insubordination by Haas on February 22. Kelly Services asserts that Haas had been given a cell phone number and a home phone number of a supervisor and instructions to contact her directly regarding any time off requests or late arrivals, and that Haas's failure to do so for more than two days after receiving messages from Kelly Services on February 22

-13-

constituted insubordination. Haas claims that she was not required to return telephone calls because she did not receive the messages until after 5 p.m. on a Friday. Even were this narrow question resolved in favor of Haas, the fact that she might reasonably have believed she could avoid returning telephone calls over a weekend does not tend to prove that Kelly Services acted with a retaliatory motive. To prove unlawful retaliation, Haas must show at a minimum not only that Kelly Services erred in finding that Haas was insubordinate, but that the employees who terminated her *did not really believe* that Haas was insubordinate. *Scroggins v. Univ. of Minn.*, 221 F.3d 1042, 1045 (8th Cir. 2000). The court identifies no evidence to support this additional inference.

The second asserted material factual dispute – whether Haas was given an opportunity to explain why she failed to call or return to work – suffers from a similar deficiency. Haas has produced no evidence to contradict the testimony of Kelly Services supervisors that they acted on the belief that Haas should have returned their numerous telephone calls at some time on Friday or over the weekend by calling a supervisor's cell phone or home phone, as she had been instructed to do after a previous communication problem. And even if the Kelly Services supervisors did knowingly fail to follow company policy when they terminated Haas, the court provides the answer to this contention in rejecting Haas's comparable argument with respect to her claim of age discrimination: "Kelly 'can certainly choose how to run its business,' including not to follow its own personnel policies regarding termination of an employee or handling claims of discrimination, 'as long as it does not unlawfully discriminate in doing so.'" *Ante* at 11 (quoting *Mayer v. Nextel West Corp.*, 318 F.3d 803, 810 (8th Cir. 2003)).

The final asserted material dispute – that there is "evidence in the record that the decision to fire Haas occurred before she filed her claims of discrimination" – does not support Haas's claim. If Kelly Services had decided to terminate Haas *before* Haas complained of age discrimination, then the decision to fire Haas

obviously was not made in retaliation for Haas's *later* complaint of age discrimination. Proof that Haas's termination was predetermined might demonstrate that she was not really fired as a result of insubordination on February 22, but it would not support a claim of unlawful retaliation.

The record shows scant evidence, other than temporal proximity between Haas's meritless complaint of age discrimination and her termination, to support a prima facie case of unlawful retaliatory discharge. I agree with the district court, moreover, that even assuming the existence of a prima facie case, Haas has not presented evidence that tends to establish that the employer's stated reasons for terminating Haas were both false and a pretext for illegal retaliation. As the district court observed in rejecting the alleged disputes of material fact advanced by Haas in response to the motion for summary judgment:

> Several of these matters have no bearing on creating a jury question on the issue of retaliatory animus, and, in fact, only relate to retaliation because Haas contends they are related to retaliation. *Compare Mayer v. Nextel West Corp., supra*, 318 F.3d at 809 ("Evidence, not contentions, avoids summary judgment."). For instance, Haas contends that Wessel and Schuster's retaliatory motive was so strong that they could not even wait until the scheduled PIP review date of February 28 to get rid of Haas. While it is true that Haas was terminated prior to February 28, the <u>evidence</u> suggests that termination occurred when it did because of Haas' insubordination. There is <u>no evidence</u> to suggest that the date of termination was "moved up" because of illegal retaliation.

For these reasons, I would affirm the judgment of the district court, and I respectfully dissent from the court's decision to remand the case for further proceedings.

_____